815 F.2d 76
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Donald J. DAVENPORT, Plaintiff-Appellant
v.
P.P.G. INDUSTRIES, INC., Defendant-Appellee.
 No. 85-1671.
 United States Court of Appeals, Sixth Circuit.
 Feb. 24, 1987.
 
 Before ENGEL, JONES, and NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 In 1976 and early 1977 plaintiff Davenport, a custom auto painter, and the defendant P.P.G., the manufacturer of custom painting materials, collaborated in the production of a custom painting instruction manual. Davenport claimed credit for originating the idea which he then brought to Donald DeSautels and Larry Cianco who were employed by the Ditzler Paints Division of P.P.G. The ultimate product was a rather handsome work which included some photography and some text by plaintiff Davenport assembled and edited by and ultimately produced at the expense of P.P.G. There was a dispute, according to Davenport, as to whether he would be listed as a co-author and co-copywriter of the manual and initial conversations of the parties did not clarify Davenport's role in the production. It was, however, contemplated that he would get credit for his contribution and while the manual was to be distributed without cost by P.P.G. presumably as advertising for the company, a great deal of the importance to Mr. Davenport was his association with the publication of the brochure and the credit he could claim in his own business for that contribution.
 
 
 2
 The brochure was copyrighted by P.P.G. in its own name and P.P.G. arranged for initial printing of 30,000 copies of the manual. Before this occurred, however, plaintiff Davenport had indicated that he wished to have a larger voice and financial interest in the production and plaintiff initially said that he wished as his share to be provided with 50,000 copies which he could presumably market for his own profit. This was considered excessive by P.P.G. and was formally rejected by the defendant in a letter which it directed to plaintiff on April 6, 1977. At that time P.P.G. told Davenport that it claimed the right of copyright of the manual and that plaintiff would not be allowed to distribute it. At the same time P.P.G. recognized the contribution that Davenport had made and expressed its gratitude and stated that he could have 450 copies of the manual. Finally the letter of April 6 stated that they would not proceed with the project if Davenport insisted upon rights in excess of those outlined:
 
 
 3
 Until I hear from you, I will not proceed with the project. I am certain you can appreciate this as I do not want any reprisal once we are in production. If you do indeed want to be a part of this project, fine, if you don't, please inform me of the same and I will pay you for your services.
 
 
 4
 Mr. Davenport responded by a letter in which he appeared to accept the offer but understood that the offer was that the defendant would furnish him as many copies as Davenport wanted. P.P.G. sent plaintiff another letter stating that the offer was for 450 copies and subsequently the production of the brochure proceeded, in September 1977. The manual listed the plaintiff as a contributing editor, carried a copyright notice and later Davenport was informed that he could pick up his 450 copies "in the total quantity we agreed upon." Plaintiff thereupon took 450 copies. A second printing of 30,000 copies was had in 1983 but this time the manual did not list plaintiff as a contributing editor nor carry a copyright notice. Plaintiff thereupon engaged a lawyer and filed his complaint in the United States District Court for the Eastern District of Michigan on June 22, 1983.
 
 
 5
 Plaintiff's complaint proceeded upon three different theories, for fraud, for unjust enrichment, and for an accounting in connection with the production of the manual. A jury was demanded but after the completion of proofs, the district judge granted a directed verdict in favor of the defendant primarily upon the basis that upon undisputed facts the case was duly barred by the applicable six year Michigan statute of limitations and even more important and to the extent that equitable issues were at stake, by laches.
 
 
 6
 Upon a careful review of the record we agree.
 
 
 7
 It appears without controversy that after April 6, 1977 P.P.G. had unequivocally informed Mr. Davenport of its position and that it would not permit him either to be considered as a co-owner, co-copywriter or otherwise entitled to any other relief other than receipt of 450 copies. It did indicate that if the plaintiff preferred to be compensated for his services they might consider that but it was also equally evident that the acceptance of the 450 copies would otherwise have to be in full satisfaction of any claims. Plaintiff thereafter accepted the 450 copies. Nothing was done after April 6, 1977 which in our view or in the view of the district judge could reasonably be construed as tolling the statute of limitations.
 
 
 8
 Davenport claims he was defrauded because P.P.G. had misrepresented the date it copyrighted the manual. It developed that the copyright was not applied for until 1978. Regardless of this, however, nothing about this conduct could reasonably be construed to have misled Davenport concerning P.P.G.'s unmistakable assertion of its ownership and rights in the manual. Davenport was fully aware of this well more than six years prior to his commencement of suit. To the extent he was entitled to have his claims adjudicated by a jury, they must be deemed to have been barred by the statute of limitations. To the extent that his claims for fraud, unjust enrichment and accounting rested upon equitable principles, we conclude that the trial judge did not err in holding such claims barred by the equitable doctrine of laches.
 
 
 9
 In so ruling, we do not reach the other issues raised by appellant, including whether the "work for hire" doctrine applied to confer upon or deprive plaintiff of any rights as a result of the relationship of the parties. Nor need we decide the propriety of the trial judge's determination that Davenport's own unsupported opinion testimony concerning the value of his contribution was not sufficient evidence to support any claim of damages to which he might otherwise have been entitled.
 
 
 10
 Accordingly, the judgment of the district court is AFFIRMED.